**SO ORDERED.**

**SIGNED this 10 day of February, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION**

IN RE:

| | |
|---|---|
| **TANGLEWOOD FARMS, INC. OF ELIZABETH CITY,** | **CASE NO. 10-06719-8-JRL** |
| | Chapter 11 |
| DEBTOR. | |

IN RE:

| | |
|---|---|
| **JAMES HOWARD WINSLOW and BILLIE REID WINSLOW,** | **CASE NO. 10-06745-8-JRL** |
| | Chapter 11 |
| DEBTORS. | |

### ORDER

This case is before the court on the Bankruptcy Administrator's emergency motion to appoint chapter 11 trustee. On January 25, 2011, the court held a hearing on this matter in Raleigh, North Carolina.

### BACKGROUND

Tanglewood Farms, Inc. of Elizabeth City ("Tanglewood"), filed a chapter 11 bankruptcy petition on August 20, 2010. James Howard Winslow and Billie Reid Winslow ("Winslows")

filed a chapter 11 bankruptcy petition on August 23, 2010. On November 5, 2010, Adams, Martin & Associates P.A. was appointed to serve as examiner to investigate allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, and irregularity in the management of the debtors' affairs. The examiner's report was filed on December 5, 2010.

The examiner's report made several findings. Mr. Winslow acknowledged that he had sold grain that he did not own, and informed the examiner that he opened a bank account in the name of Belvidere Farmers Exchange ("Belvidere"). Mr. Winslow explained that he ran Tanglewood sales through the Belvidere account so that he could access the proceeds from grain sales. The examiner was unable to obtain complete records on all the entities including Belvidere and thus recommended further investigation. However, the implication of the report was that Mr. Winslow had diverted Tanglewood grain proceeds away from Meherrin Agricultural and Chemical Company ("Meherrin"), the lien creditor entitled to them.

Testimony at the hearing revealed that the grain storage facility owned by Tanglewood stored Mr. Winslow's grain as well as that of other farmers. Tanglewood would sell the commingled grain. The proceeds of all grain sales would go into Tanglewood's account. Historically, Tanglewood had kept the proceeds of the other farmers until they requested them. Mr. Winslow testified he would use those proceeds to fund his operations or pay other farmers as they demanded payment.

Tanglewood and Mr. Winslow typically had enough cash on hand to repay the farmers' proceeds with interest until operations began to suffer in 2008 after a severe drought. In recent years, Meherrin financed both entities' operations in exchange for a first priority lien on their crops. In the year preceding the bankruptcy filings, all of the proceeds from Tanglewood's sales

were being paid by the purchasers to Meherrin, including the proceeds collected from the sale of other farmers' grain. The debtors became unable to fund ongoing operations or pay the other farmers their proceeds because of the turn over of all crop proceeds to Meherrin, per their lien.

In an attempt to protect the farmers whose grain he sold and free up operating capital, Mr. Winslow sold grain in the name of Belvidere and deposited the proceeds into the Belvidere account. Since filing chapter 11, the Belvidere account has been closed and no similar activity has occurred. Critically, there is no evidence that grain in which Meherrin had a legitimate lien was sold in this fashion. In fact, Merherrin, the debtors' largest secured creditor, opposes the motion for appointment of a trustee. The court appointed a chief restructuring officer, Doug Gurkins, on August 30, 2010. Under his guidance the farming operation has been successful.

## **DISCUSSION**

The Bankruptcy Administrator seeks the appointment of a chapter 11 trustee. The court finds that the Bankruptcy Administrator has not overcome the high standard associated with the appointment of a chapter 11 trustee.

Section 1104(a) of the Bankruptcy Code provides that the court shall order the appointment of a trustee in two instances:

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate.

11 U.S.C. § 1104(a). The movant has the burden of proof, and must demonstrate gross mismanagement of the property or fraud by clear and convincing evidence. *In re Brown*, 2000 WL 34541413,*10 (Bankr. E.D.N.C. 2000).

The appointment of a trustee in a chapter 11 case is an extraordinary remedy, and there is a strong presumption in favor of allowing the debtor to remain in possession. *In re Heck's Props.,* 151 B.R. 739, 756 (S.D.W.Va.1992) (citing *Comm. of Dalkon Shield Claimants v. A.H. Robins Co., Inc.,* 828 F.2d 239, 241 (4th Cir.1987)). The court has discretionary authority to determine whether conduct rises to the level of "cause." *Dalkon Shield,* 828 F.2d at 242.

As the facts illustrate, the proceeds of Meherrin's collateral were never diverted. Meherrin was continually paid from the sale of Winslow's grain by Tanglewood. Although the Belvidere account was a ruse, the court does not perceive any actual harm caused any creditor by it. Thus it does not rise to the level of gross mismanagement or fraud.

Under the current management, the farming operation of the debtors was a success in 2010. If a trustee were appointed and looked at the projections, the court suspects that he or she would largely ratify the decisions already made by the debtors and the Chief Restructuring Officer. Additionally, the broad powers given to the Chief Restructuring Officer in the Winslow case insure that current operations are in compliance with chapter 11.

Bankruptcy courts are generally reluctant to displace the management and control of the debtors' business unless extraordinary circumstances warrant it. There is no justification here for disrupting the debtors' business. Appointment of a chapter 11 trustee will only result in unnecessary expense and costs to the detriment of the debtors' remaining creditors.

The motion for appointment of a trustee is DENIED. That said, the court does anticipate that the examiner's report will be completed, and than any confirmed plan will authorize a plan trustee to investigate and bring any appropriate avoidance actions.

**END OF DOCUMENT**