**SO ORDERED.**

**SIGNED this 22 day of June, 2011.**

_____
J. Rich Leonard
United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

IN RE:

JAMES HOWARD WINSLOW and
BILLIE REID WINSLOW,                           CASE NO. 10-06745-8-JRL

DEBTORS.                                       CHAPTER 11

### ORDER

This matter came before the court on creditor Meherrin Agricultural & Chemical Company's application for compensation. A hearing was held on May 10, 2011 in Raleigh, North Carolina.

### BACKGROUND

Meherrin Agricultural & Chemical Company ("Meherrin") is one of several secured creditors in James and Billie Winslow's chapter 11 proceeding. The Winslows operate Tanglewood Farms, Inc. of Elizabeth City ("Tanglewood"), another entity that filed for chapter 11 relief with the Winslows on August 23, 2010. Meherrin provided crop financing for the Winslows' individual farm operations in the form of three separate promissory notes. The first note ("Note 1") was executed on February 2, 2007, and modified on October 30, 2009, to provide crop financing for 2009. With the modification, Note 1 has a maximum principal

balance of $5 million. Note 1 is secured by two deeds of trust dated October 30, 2009 and April 29, 2010 concerning real property in Pasquotank County, North Carolina, as well as a blanket lien on the 2009 crops, the debtors' equipment, and other personal property. The October 30, 2009 deed of trust encumbers real property referred to by the parties involved as the "MetLife tracts." The April 29, 2010 deed of trust encumbers real property referred to by the parties as the "AgCarolina tracts." After the Winslows filed for chapter 11 relief, Meherrin filed a proof of claim based on Note 1 in the amount of $4,083,588.69.

The parties executed a second note ("Note 2") on February 18, 2009, to provide crop financing for 2008 in the amount of $1,920,144.15. Note 2 is secured by the same two deeds of trust which secure Note 1, as well as a blanket lien on the debtors' crops, equipment, and other personal property. Meherrin filed a proof of claim in the amount of $1,556,593.14 for the balance owed on Note 2.

Finally, the parties executed a third note ("Note 3") on April 29, 2010, in the amount of $3.5 million to finance the 2010 crop year. Note 3 is secured by the two deeds of trust which secure Notes 1 and 2. Meherrin and the objecting creditor, C.A. Perry & Sons, Inc. ("C.A. Perry") disagree as to the priority of this lien. Note 3 is also secured by a blanket lien on the debtors' crops, equipment, and other personal property. Meherrin filed a proof of claim in the amount of $2,208,284.33.

The total debt owed to Meherrin based on the proofs of claim is approximately $7,848,609. That debt has been paid in full. On September 15, 2010, a public sale of Tanglewood's granary facility was conducted from which Meherrin collected approximately $2.3 million towards its outstanding debt. Other payments came from proceeds of crops and in

February and March 2011, auctions of equipment and real property were conducted respectively. Meherrin filed an application for $118,321.70 in attorneys' fees and $2,382.20 in legal expenses to be paid out of the March 2011 real property auction. C.A. Perry objects to a portion of these fees. First, C.A. Perry contends $56,444.70 of the fees should be disallowed entirely because the fees were incurred for matters unrelated to collecting and enforcing the debt at issue. Second, C.A. Perry argues $15,146.00 of the fees requested should not come from the proceeds of the real property sale, but out of Meherrin's other collateral, such as the equipment. C.A. Perry raises no objection to the request for the remaining $46,731.00 in attorneys' fees.

## DISCUSSION

The court first addresses C.A. Perry's objection that $56,444.70 in attorneys' fees were not incurred in connection with collection of any of the three notes. After reviewing Meherrin's timesheets, C.A. Perry objects to the inclusion of fees earned for the following matters: 2010 and 2011 post-petition financing; 2010 farming issues; allocation of 2010 crop sales; disputes with purchase money lien equipment claimants; the Talmedge Meads adversary proceeding; 2010 crop year invoices; leases; cash collateral usage; crop liens; discharge; conversion; creditor committee and farmer issues and other operational matters.

The issue of whether attorneys' fees can be awarded under 11 U.S.C. § 506(b) is based on interpretation of applicable state law. In Independence Nat'l Bank v. Dye Master Realty, Inc. (In re Dye Master Realty, Inc.), 15 B.R. 932 (Bankr. W.D.N.C. 1981), the court held that before an award of fees under § 506(b) can be made, compliance with state law as to any conditions precedent to the recovery of attorneys' fees must be found. Id. at 935-36. The court also found that the construction of contracts providing for attorneys' fees is done through the lens of state

law.  Id.  After assessing whether conditions precedent have been fulfilled and interpreting the contract under state law, federal courts must then determine whether the amount of fees is reasonable under federal law.  Id.; See also 4 Collier on Bankruptcy ¶ 506.04[3][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).  Under this standard, courts may inquire into whether the services in question were reasonably required under the circumstances.  Id.

North Carolina law allows for the recovery of reasonable attorneys' fees incurred in connection with the collection of debts where a note provides for such a recovery.  N.C. Gen. Stat. § 6-21.2.  A creditor seeking attorneys' fees cannot collect more than 15% of the outstanding balance on the debt at issue.  § 6-21.2(1).  Since the amount sought by Meherrin is well below 15% of the outstanding balance, the court need not address the statutory limit.  At issue is whether all the fees sought by Meherrin were "reasonable attorneys' fees" incurred in connection with collection.  Under North Carolina law, the statute allowing attorneys' fees in connection with collection on notes "is a remedial statute and should be construed liberally." Coastal Prod. Credit Assoc. v. Goodson Farms, Inc., 70 N.C. App. 221, 227 (N.C. Ct. App. 1984) (citing Enters., Inc. v. Equip. Co., 300 N.C. 286 (1980)).  The North Carolina Court of Appeals examined the rationale and intent behind the statute allowing attorneys' fees in debt collection actions.

> Mindful of our duty to construe the statute liberally, and of the infinite variety of activities which attorneys may engage in to bring a case to successful settlement or verdict, we believe that when other actions are reasonably related to the collection of the underlying note sued upon, attorneys' fees incurred therein may properly be awarded under G.S. 6-21.2. . . . The General Assembly did not limit those fees solely to those incurred directly in the prosecution of the action on the note.

Coastal Prod. Credit Assoc., 70 N.C. App. at 227-28.  Ancillary claims are often necessary to

collect debts. Id. at 228. The Court of Appeals went on to cite United States v. Equitable Trust Co., 283 U.S. 738 (1931), where the Supreme Court disallowed fees "where such proceedings could neither disturb the prosecution of the present suit or affect its outcome." Id. (citing Equitable Trust Co.). Extending this reasoning, the Court of Appeals found that "allowance of fees for participation in other proceedings to expedite collection or preserve assets would not constitute an abuse of discretion." Id. (emphasis added). In 2009, the Court of Appeals specifically held that fees incurred in an out-of-state bankruptcy proceeding were reasonable for the creditor of a lease agreement to be awarded. Telerent Leasing Corp. v. Boaziz, 200 N.C. App. 761, 766-67 (N.C. Ct. App. 2009). There, the lessor spent $31,311.19 in attorneys' fees in an ancillary Kansas bankruptcy proceeding. The court does not provide much detail as to what went on in the bankruptcy proceeding, but it appears the creditor, at the very least, repossessed the leased equipment, sold it and applied the proceeds to the balance within the bankruptcy. Id. at 762.

Keeping in line with the liberal construction of the attorneys' fees statute, the court finds that most of Meherrin's $56,444.70 in attorneys' fees are allowable. Meherrin's actions taken in connection with post-petition financing, 2010 farming issues, and the allocation of crop sales were vital toward keeping the debtors operating through a tenuous period.[1] According to Meherrin's motion for relief from stay, filed three days after the commencement of the case, Meherrin had a questionable equity cushion of approximately $200,000.00. Despite this slim cushion relative to the total claim, Meherrin chose to continue financing the debtors' operations

---

[1] The court will address the fees incurred in relation to the Talmedge Meads adversary proceeding *infra*.

in hopes of receiving payment on the notes which financed the previous, less productive crop years.  At the commencement of the case, the projected proceeds from the 2010 crops appeared grim, but the actual proceeds exceeded the estimates.  With the first, blanket lien on the debtors' crops and equipment and an initial claim of $7.8 million, Meherrin had a keen interest in the continued farming of the debtors, their operations, and the success of the crops.  The post-petition financing, supervision of operations, and involvement in crop sales issues were all efforts taken to "expedite collection" and "preserve assets."  The court finds that a creditor in Meherrin's position would similarly take efforts to keep the debtor operating to maximize return on the debt.

C.A. Perry cites two cases from the Middle District of North Carolina which weigh against allowing Meherrin's fees.  The first, In re Gwyn, 150 B.R. 150 (Bankr. M.D.N.C. 1993), concerns an award of attorneys' fees for post-confirmation services.  The oversecured creditor sought $33,429.63 in fees and expenses for services performed after confirmation, including drafting loan modification documents, and other transactional work involved in updating title to the property serving as collateral.  Id. at 153-54.  The court found these were not necessary for the collection of the debt, particularly in light of the large equity cushion in the collateral.  Id. at 155-56.  Meherrin seeks attorneys' fees for pre-confirmation work, a period of time in which it has been genuinely unclear the extent to which Meherrin would realize its $7.8 million claim.  There are fewer post-confirmation instances in which a creditor incurs fees related to collection, save for actions enforcing the actual confirmation order itself.

The Middle District also denied an application for attorneys' fees in In re McCormick, 417 B.R. 372 (Bankr. M.D.N.C. 2008).  C.A. Perry cites McCormick for the proposition that if

services are not necessary to protect the creditor's oversecured interest, then they should not be charged to the debtor, unless the note states otherwise. Id. at 376. While this is an accurate statement of the law, the court in McCormick denied the application more specifically because the creditor was clearly going to be paid in full, the loan was not in default on the petition date, and the attorneys spent excessive time on services such as preparing the proof of claim (to the tune of $2,491.00) and preparing the fee application ($8,195.40 billed). Here, Meherrin's notes were in default on the date of filing, it was questionable whether Mehherrin would be paid in full, and it has not been alleged that Meherrin's counsel spent excessive amounts of time on the tasks at issue—only whether the tasks themselves are sufficiently related to the creditor's collection efforts.

While the court finds that most of the $56,444.70 in attorneys' fees were spent protecting Meherrin's oversecured interest, a portion of this amount was not. After reviewing the timesheets submitted by Meherrin's counsel, the court finds that some of the fees incurred in relation to the Talmedge Meads adversary proceeding were excessive. Counsel investigated the validity of a deed of trust held by Talmedge Meads, a creditor in the Winslows' case. The Winslows executed a note and deed of trust encumbering waterfront property in favor of Meads on March 18, 2005. Meherrin also held an interest in this property based on the October 30, 2009 deed of trust which appeared to be junior to Meads' interest. After assessing Meads' proof of claim, Meherrin believed the deed of trust was defective and initiated an adversary proceeding to avoid it. The court does not find the entire adversary proceeding unrelated to Meherrin's protection of its secured status, but rather the time spent specifically on title examination was excessive. Counsel spent six hours examining the title of the property and 22.7 hours

researching the validity of Meads' deed of trust and the effect on priority of Meherrin's deed of trust upon avoidance of Meads' interest. Although this combined 28.7 hours of legal work was performed by different attorneys at varying hourly rates, the $5,224.50 in fees was nonetheless excessive.[2] A reduction of 50% of the fees incurred for title examination and legal research is appropriate.

Turning to C.A. Perry's objection to Meherrin's application for $15,146.00 in attorneys' fees, the issue regarding this segment of the application is whether these fees should be awarded out of the proceeds from the real property partially securing Note 3 or other collateral securing the obligation, namely equipment. The parties agree all three of Meherrin's notes are secured by a blanket lien on crops and equipment. The parties also agree that Notes 1 and 2 are secured by deeds of trust dated October 30, 2009 and April 29, 2010 on the MetLife and AgCarolina tracts, which are senior to C.A. Perry's interest in the real property. C.A. Perry argues that while Note 3 is secured by these two deeds of trust, the security interests do not have the same priority as those securing Notes 1 and 2 and are junior to C.A. Perry's interests in the MetLife and AgCarolina tracts. As a result, C.A. Perry contends that Meherrin's attorneys' fees incurred for collection on Note 3 should not come out of the sale of the MetLife and AgCarolina tracts. Meherrin responds that the October 30, 2009 deed of trust is a future advances deed of trust that secures any and all other promissory notes thereafter executed by the Winslows, which includes Note 3. As such, Meherrin argues the interest securing Note 3 has the same priority as Notes 1 and 2 which are senior to C.A. Perry's interest in the collateral.

---

[2]The court acknowledges Meherrin's argument that the title was complex given the property was owned by three co-owners; however, the court finds a recovery of a reduced amount of hours spent on this research is reasonable.

Note 3 is secured by the October 30, 2009 deed of trust which encumbers the MetLife tracts and has priority based on its effective date and is therefore senior to C.A. Perry's lien on that property.[3] The October 30, 2009 deed of trust is a future advances deed of trust and complies with the requirements of North Carolina General Statute § 45-68(1b). The deed of trust states that it secures "any and all other promissory notes . . . hereafter executed by Borrower." It also includes a maximum principal amount of $6,700,863.17 that may be secured by the deed of trust at any one time and specifies a 15-year period within which future obligations may be incurred and still secured by the deed of trust. Furthermore, Note 3 states that the collateral securing the note includes the October 30, 2009 deed of trust. Therefore all three notes have the same priority in the MetLife tracts which is senior to C.A. Perry's interest.

Although the priority of Meherrin's interest in the real property does not pose a problem to its application for attorneys' fees out of the real property proceeds, the maximum principal balance on the future advances deed of trust does. Meherrin's total claim in the case is $7,848,609, but the future advances deed of trust dated October 30, 2009 has a maximum of $6,700,863.17. Notes 1 and 2 clearly fall within this limit, with a combined balance of $5,540,181. Being oversecured, the attorneys' fees incurred in connection with these notes can come from the proceeds of the MetLife and AgCarolina tracts. Note 3 is only partially secured by these tracts since the balance on the note, $2,208,284, exceeds the $6.7 million limit on the future advances deed of trust. Note 3 is therefore undersecured as it relates to the real property collateral. Meherrin must look to other collateral securing Note 3, such as the debtors' crops and

---

[3]Note 3 is also secured by the April 29, 2010 deed of trust encumbering the AgCarolina tracts, but the relation of the earlier October 30, 2009 deed of trust to Note 3 is more important for purposes of determining whether Meherrin's interest is junior or senior to C.A. Perry's.

equipment, to collect attorneys' fees. The court can make this distinction—that Note 3 is undersecured as to the real property collateral and oversecured as to the crops and equipment—because 11 U.S.C. § 506(a)(1) states that determination of secured status is based on the value of a creditor's interest "in such property." The extent to which Note 3 is secured by the October 30, 2009 deed of trust is limited by the maximum principal balance, thus the MetLife tracts only secure a portion of the balance of Note 3.

Despite C.A. Perry's efforts to parcel out which services of Meherrin's counsel were rendered for collection of Note 3 as compared to Notes 1 and 2, the court is not persuaded that counsel differentiated its actions in such a manner. Based on the detailed timesheets submitted, the efforts exerted by counsel for Meherrin were made to collect on the entire $7.8 million debt. As such, the court will reduce Meherrin's total request for fees—since the services rendered, except for some of the Talmedge Meads fees, were reasonably related to collection—by the percent of the total debt consumed by the Note 3 balance. The balance on Note 3 represents 28% of the total debt, therefore 72% of the fees requested are appropriate minus $2,612.25 in excessive fees incurred on the Talmedge Meads matter. Since Note 3 is also secured by the blanket lien on crops and equipment, Meherrin can apply for the remaining 28% of its application out of this collateral because it is oversecured as to this personal property.

## CONCLUSION

Based on the foregoing, Meherrin's application for attorneys' fees is approved in the amount of $83,310.80 and expenses in the amount of $2,382.20 to be paid out of the proceeds of the March 22, 2011 real property auction.

**END OF DOCUMENT**