IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:11-CV-00015-D

IN RE WINSLOW )
Bankruptcy Appeal from Order )
)
)
MARJORIE K. LYNCH, )
Bankruptcy Administrator, )
)
        Appellant, )
)
    v. )    **ORDER**
)
JAMES HOWARD WINSLOW, )
and BILLIE REID WINSLOW, )
)
        Appellees. )

       This case involves whether a third party auctioneer is an "insider" of the debtors under 11 U.S.C. § 101(31). Third parties having a certain, statutorily defined relationship with a debtor are considered "statutory insiders" under section 101(31) and may not provide professional services to the debtor. However, due to section 101(31)'s use of the word "includes," the definition of statutory insiders is not exclusive. Accordingly, and semantically odd, third parties having a sufficiently close relationship with a debtor are considered "non-statutory insiders" under section 101(31) and also may not provide professional services to the debtor. The term "non-statutory insider" is semantically odd because both statutory and non-statutory insider status are grounded in 11 U.S.C. § 101(31).

       The United States Bankruptcy Court for the Eastern District of North Carolina determined that Country Boys Auction and Realty, Inc. ("Country Boys") is not an "insider" of the debtors James and Billie Winslow ("Winslows" or "debtors") under 11 U.S.C. § 101(31) and, therefore, is not disqualified to serve as the bankruptcy estate's auctioneer. The Bankruptcy Administrator has filed this appeal, which focuses on whether Country Boys is a non-statutory insider under 11 U.S.C. §

101(31). As explained below, the record demonstrates that Country Boys is not a statutory or non-statutory insider under 11 U.S.C. § 101(31). Accordingly, the court affirms the bankruptcy court's judgment.

I.

On August 23, 2010, the Winslows filed a voluntary bankruptcy petition under Chapter 11 of the bankruptcy code. Voluntary Petition [D.E. 2-1]. That day, the Winslows applied to retain Douglas M. Gurkins as their chief restructuring officer ("CRO"). [D.E. 2-2]. On September 10, 2010, the bankruptcy court approved the debtors' application. Order Approving CRO [D.E. 2-3]. As CRO, Douglas Gurkins carried "all of the rights, powers and duties of a debtor in possession" under the bankruptcy code. Id. ¶ 5. On December 22, 2010, the Winslows sought to employ Country Boys as auctioneer to sell the Winslows' personal and real property. Appl. for Approval of Auctioneer [D.E. 2-4]. Country Boys's commission was to be set by local court rules and by a court-established commissions scale. See id. ¶¶ 6–8; Mem. Supp. Appl. for Approval of Auctioneer [D.E. 2-7] ¶ 3; Appellee Br. [D.E. 10] 14 & Att. 1. No other auction company was considered for the position. Hr'g Tr. [D.E. 3] 73.

Country Boys is a highly regarded and capable auction company. Nevertheless, on January 18, 2011, the Bankruptcy Administrator objected to the employment of Country Boys, arguing that the company was an "insider" of the Winslows under 11 U.S.C. § 101(31). Bankruptcy Administrator's Objection [D.E. 2-6].

The Winslows have no direct connection with Country Boys. See Order Approving Auctioneer [D.E. 1-1] 2–3; Appl. for Approval of Auctioneer ¶ 2. But approximately five and one-half years before the Winslows hired Douglas Gurkins as their CRO—and approximately six years before the Winslows sought to employ Country Boys—Douglas Gurkins was the president and principal shareholder of Country Boys. See Suppl. to Appl. for Approval of Auctioneer [D.E. 2-10] ¶¶ 2, 4(b)–(c). In January 2005, Douglas Gurkins resigned as president and transferred all of his

2

shares to his adult son, Michael Gurkins. See Am. to Appl. for Approval of Auctioneer [D.E. 2-5] ¶ 3; Suppl. to Appl. for Approval of Auctioneer ¶¶ 2, 4(b)–(c). Michael Gurkins is Country Boys's current president and principal shareholder and is a well-regarded auctioneer. See Am. to Appl. for Approval of Auctioneer ¶ 3; Suppl. to Appl. for Approval of Auctioneer ¶ 4(c). Douglas Gurkins has, however, continued to use a Country Boys email address, see Hr'g Tr. 74, and, until this litigation, was mentioned on the masthead of the company website. See id. 73–74; compare Bankruptcy Administrator's Objection, Ex. A, with Country Boys Auction & Realty, Inc., Homepage, http://www.countryboysauction.com (last visited Feb. 22, 2012). Furthermore, Douglas Gurkins admitted to the bankruptcy court that he "will always answer a question [from his son] if [his son] come[s] and ask[s]" him. Hr'g Tr. 74. Since resigning from Country Boys and transferring his shares, Douglas Gurkins has not "gained anything" or "made any money" from Country Boys. Id. More plainly, since January 2005, Douglas Gurkins has "not accepted one dime's worth of funds from Country Boy's [sic] . . . ." Id. Moreover, the relationship between the Gurkinses and Country Boys was fully disclosed before the Winslows selected Country Boys as their auctioneer. See Appl. for Approval of Auctioneer; Am. to Appl. for Approval of Auctioneer; Mem. Supp. Appl. for Approval of Auctioneer; Suppl. to Appl. for Approval of Auctioneer.

On January 25, 2011, the bankruptcy court held a hearing to determine whether Country Boys was an "insider" of the Winslows under 11 U.S.C. § 101(31) and should have been disqualified as the Winslows' auctioneer.[1] Ruling from the bench that same day, the bankruptcy court determined

---

[1] 11 U.S.C. § 101(31) provides:

> [t]he term "insider" includes—
> (A) if the debtor is an individual—
> (i) [a] relative of the debtor or of a general partner of the debtor;
> (ii) [a] partnership in which the debtor is a general partner;
> (iii) [a] general partner of the debtor; or

3

that Country Boys was not an insider of the Winslows and that the Winslows could properly employ Country Boys. See Hr'g Tr. 130–33. On February 3, 2011, the bankruptcy court entered a written order approving Country Boys as the Winslows' auctioneer. See Order Approving Auctioneer. Following the bankruptcy court's adverse ruling, the Bankruptcy Administrator did not seek to stay the auction. See Docket Sheet [D.E. 2-11] 94–127. The auction proceeded apace, with Country Boys auctioning the Winslows' personal property on February 3, 2011. In re Winslow, No. 10-06745-8-JRL, [D.E. 508] at 2 (Bankr. E.D.N.C. Apr. 29, 2011); see Appellee Br. 9.[2] The buyers paid their respective purchase prices and took possession of their purchased property. On March 10, 2011, the Bankruptcy Administrator filed a notice of appeal. [D.E. 1]. On March 14, 2011, the Winslows moved to approve the completed auction of their personal property and to pay Country Boys's commission. In re Winslow, No. 10-06745-8-JRL, [D.E. 440] (Bankr. E.D.N.C. Mar. 14, 2011); see Docket Sheet 117; Appellee Br. 9. The Bankruptcy Administrator did not object. See Docket Sheet 117–27. On April 21, 2011, the Bankruptcy Administrator filed an appellate brief in this court. Appellant Br. [D.E. 9]. On April 29, 2011, the bankruptcy court granted the Winslows' motion to approve the personal-property auction, after which the Winslows' creditors received their proportionate share of the auction proceeds and Country Boys received its $34,367 auction commission. See In re Winslow, No. 10-06745-8-JRL, [D.E. 508]; Appellee Br. 9–10. On May 5, 2011, the Winslows responded in opposition to the Bankruptcy Administrator's appellate brief. Appellee Br. On May 19, 2011, the Bankruptcy Administrator replied. Appellant Reply [D.E. 11]. On December 6, 2011, the court heard oral argument.

---

> (iv) [a] corporation of which the debtor is a director,
> officer, or person in control . . . .

11 U.S.C. § 101(31).

[2] A different auctioneer sold the Winslows' real property. See In re Winslow, No. 10-06745-8-JRL, [D.E. 475] at 1 (Bankr. E.D.N.C. Apr. 4, 2011); id., [D.E. 504] at 2 (Bankr. E.D.N.C. Apr. 28, 2011).

4

The Bankruptcy Administrator does not allege any wrongdoing on the part of Douglas Gurkins, Michael Gurkins, or Country Boys. Bankruptcy Administrator's Objection ¶¶ 8–9. "Quite the contrary, the Bankruptcy Administrator has great respect for the credibility and hard work of both Doug and Michael Gurkins." Id. ¶ 9. The Bankruptcy Administrator's objection to the Winslows' employment of Country Boys focuses on the potential conflict of interest between Douglas Gurkins and Country Boys, as "the decisions made by Doug Gurkins as CRO may have a direct financial impact on himself and his son." Id. ¶ 8.

## II.

Initially, the Winslows argue that this appeal should be dismissed as equitably moot. Appellee Br. 8–10. "[E]quitable mootness is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." Mac Panel Co. v. Va. Panel Corp., 283 F.3d 622, 625 (4th Cir. 2002) (emphasis removed). Applied principally in bankruptcy proceedings, this doctrine bars actions brought by parties that "seek[] a return to the status quo ante," but who "sit[] idly by and permit[] intervening events to extinguish old rights and create new ones." Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 841 F.2d 92, 93 (4th Cir. 1988). To determine whether the equitable mootness doctrine applies, a court considers

> (1) whether the appellant sought and obtained a stay; (2) whether the ... equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the ... equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties [not before the court].

Mac Panel Co., 283 F.3d at 625.

Equitable mootness does not apply here. Although the Bankruptcy Administrator did not seek a stay of the auction, such inaction is not dispositive. See id.; Cadle Co. II, Inc. v. Calvert Vill. Ltd. P'ship (In re Calvert Vill. Ltd. P'ship), No. 99-1383, 2000 WL 123965, at *2 (4th Cir. Feb. 2,

5

2000) (per curiam) (unpublished table decision). Furthermore, granting the Bankruptcy Administrator's requested relief would not affect the completed auction or the interests of third parties not before the court. The Bankruptcy Administrator requests only that Country Boys return its $34,367 auction commission. See Appellant Reply 5; cf. In re Winslow, No. 10-06745-8-JRL, [D.E. 508] at 3. Thus, those who purchased the Winslows' personal property would retain title to it, and no creditor paid from the proceeds of the auction would be forced to return any portion of its payment. Accordingly, this case is not equitably moot.

### III.

### A.

In bankruptcy appeals, a district court reviews a bankruptcy court's legal determinations de novo, and its factual findings for clear error. See Fairchild Dornier GmbH v. Official Comm. of Unsecured Creditors (In re Official Comm. of Unsecured Creditors for Dornier Aviation (N. Am.), Inc.), 453 F.3d 225, 231 (4th Cir. 2006). A finding of fact is clearly erroneous when the entire record demonstrates convincingly to the reviewing court that "a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); United States v. Hall, 664 F.3d 456, 462 (4th Cir. 2012). Courts of Appeals, however, appear to be split on whether "insider" status under 11 U.S.C. § 101(31) is a question of law or a question of fact. Some appear to hold that insider status is a purely factual determination to be reviewed only for clear error. See, e.g., Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman), 126 B.R. 63, 67 (B.A.P. 9th Cir. 1991); Wilson v. Huffman (In re Missionary Baptist Found. of Am., Inc.), 712 F.2d 206, 209–10 (5th Cir. 1983). Others appear to regard the issue as a mixed question of law and fact, for "the analysis requires the application of the historical facts to the pertinent legal standard . . . ." Three Flint Hill Ltd. P'ship v. Prudential Ins. Co. (In re Three Flint Hill Ltd. P'ship), 213 B.R. 292, 298 (D. Md. 1997); see, e.g., In re Krehl, 86 F.3d 737, 742 (7th Cir. 1996); Browning Interests v. Allison (In re Holloway), 955 F.2d 1008, 1014 (5th Cir. 1992) (indicating the court's belief that insider status is a mixed question of law and fact,

but declining to address the "prickly problem"). The Fourth Circuit has not expressly decided this issue in a published opinion, but district and bankruptcy courts within the circuit have.

When deciding the appropriate standard of review, courts must differentiate between determining statutory insider status and non-statutory insider status. A statutory insider is one who fits within the bankruptcy code's definition of an insider. See 11 U.S.C. § 101(31). Determining whether someone is a statutory insider is a mixed question of law and fact, for a bankruptcy court's factual findings must be applied to the legal standards set forth in the bankruptcy code. The text defining a statutory insider, however, is non-exhaustive in that the statutory definition uses the word "includes" to define "insider." See id. Thus, the statute creates (but does not define) what is known as a "non-statutory insider." See, e.g., Schubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.), 554 F.3d 382, 395 (3d Cir. 2009); Anstine v. Carl Zeiss Meditec AG (In re U.S. Med., Inc.), 531 F.3d 1272, 1276 (10th Cir. 2008); Koch v. Rogers (In re Broumas), Nos. 97-1182, 97-1183, 1998 WL 77842, at *7 (4th Cir. Feb. 24, 1998) (per curiam) (unpublished table decision); Butler v. David Shaw, Inc., 72 F.3d 437, 443 (4th Cir. 1996); In re Friedman, 126 B.R. at 69–70; In re Three Flint Hill, 213 B.R. at 297–98. Determining non-statutory insider status requires a different analysis. Non-statutory insider status centers on the closeness of the relationship between the debtor and the employed professional, as well as on whether the challenged transaction was made at arm's length. Both inquiries are fundamentally factual. The language of an unpublished Fourth Circuit opinion[3] and published opinions from district and bankruptcy courts within the circuit corroborate this conclusion. See In re Broumas, 1998 WL 77842, at *7 ("[Non-statutory] insider status is determined by a factual inquiry into the debtor's relationship with the alleged insider."); In re Three Flint Hill, 213 B.R. at 298 ("Courts generally hold . . . that [non-statutory] insider status is determined by a factual inquiry into the closeness of the relationship between the parties and whether the transaction

---

[3] No published Fourth Circuit opinion expressly analyzes whether non-statutory insider status is a purely factual inquiry or a mixed question of law and fact.

7

between the transferee and [the] debtor was conducted at 'arm's length.'"); Smith v. Porter (In re Carr & Porter, LLC), 416 B.R. 239, 254 (Bankr. E.D. Va. 2009) (same), aff'd, 416 B.R. 264 (E.D. Va. 2009); Magers v. Bonds (In re Bonds Distrib. Co., Inc.), Nos. 97-52130C-7W, 98-6044, 2000 WL 33673768, at *3 (Bankr. M.D.N.C. Mar. 31, 2000) (unpublished) ("[C]ourts can . . . look to the facts and circumstances of a case to determine if someone who does not meet the criteria [for statutory insider status] is nonetheless an 'insider.'"). Thus, non-statutory insider status is a purely factual determination and is reviewed for clear error.

The bankruptcy court did not focus on whether Country Boys was a non-statutory insider. For example, the order denying the Bankruptcy Administrator's objection to Country Boys's employment as auctioneer focused on whether Country Boys was a statutory insider under 11 U.S.C. § 101(31). Order Approving Auctioneer 2–3. Statements made during the hearing on the objection to Country Boys's employment likewise indicate that the lawyers and the bankruptcy court focused on whether Country Boys was a statutory insider. See, e.g., Hr'g Tr. 131 ("[I]f you come within the technical terms of the statute I have no discretion. You are an insider and you are disqualified. [But] I can't quite make [Country Boys] fit within the technical terms of the statute."); id. 132 ("Based on my understanding of the statute, the application[] [to employ Country Boys] will be approved."); id. 133 ("[W]e are . . . a court of law and our family members are disqualified when they're disqualified by law, but not otherwise."); id. ("I think we have to adhere sternly to the rules, rather than just to some general idea of what's appropriate. I don't see [that] the rules disqualify [Country Boys].").

The Bankruptcy Administrator argues that the bankruptcy court's failure to consider Country Boys's non-statutory insider status converts this issue to a mixed question of law and fact. Appellant Reply 7–9; see Appellant Br. 6. But the Bankruptcy Administrator does not cite any case law to support this proposition, and this court declines to adopt the Bankruptcy Administrator's position. The court's inquiry into non-statutory insider status is a factual one, and to the extent the bankruptcy court made factual findings that inform this analysis, those findings are reviewed for clear error.

8

Moreover, when determining non-statutory insider status, this court may rely on evidence presented to the bankruptcy court and contained in the record. See, e.g., Fed. Land Bank of Columbia v. Bartlett (In re Bartlett), 92 B.R. 142, 143 (E.D.N.C. 1988). This court may not make its own independent factual findings. Farmers Home Admin. v. Rape (In re Rape), 104 B.R. 741, 747 (W.D.N.C. 1989). However, relying exclusively upon the bankruptcy court's findings, this court may draw its own conclusions about ultimate factual issues. See C.I.R. v. Solow, 333 F.2d 76, 80 (2d Cir. 1964) ("Though the Tax Court made no express finding on the ultimate fact . . ., the basic facts found by that court permit of only one conclusion. There is no . . . reason for remanding this case to the Tax Court on the off-chance that that court might . . . make a finding which we now know we would be compelled to reverse as clearly erroneous.").

The bankruptcy court made relevant findings of fact concerning Country Boys, Douglas Gurkins, Michael Gurkins, and the Winslows in its order granting the Winslows' application to hire Country Boys as auctioneer. See Order Approving Auctioneer. The bankruptcy court expressly found "that Doug Gurkins is not in control of Country Boys." Id. 2. Instead, Douglas Gurkins "disassociated himself from Country Boys through the sale of his ownership interest five years ago. He is not involved in the day-to-day operations of the company, nor does he profit from its success." Id. The direction of the company is left to Douglas Gurkins's adult son, Michael, who holds the exclusive ownership interest in Country Boys. Id. 1–2. In addition, the bankruptcy court found that Country Boys has no connection to the Winslows, other than by the familial relationship between Douglas and Michael Gurkins. See id. 2. With these facts in mind, the court now examines whether Country Boys is a statutory or non-statutory insider of the Winslows.

B.

A debtor in possession may employ professional persons (such as an auctioneer) to perform various services related to the debtor's bankruptcy. See 11 U.S.C. § 327 (governing a trustee's employment of professionals); id. § 1107(a) (granting debtors in possession the powers and duties

9

provided to trustees under section 327). An employed professional (including an auctioneer), however, must "not hold or represent an interest adverse to the estate, and [must be] disinterested . . . ." Id. § 327(a). The Winslows retained Douglas Gurkins as their CRO and, in that capacity, he has "all of the rights, powers and duties of a debtor in possession" under the bankruptcy code. See Order Approving CRO ¶ 5. With the bankruptcy court's approval, the Winslows then employed Country Boys as an auctioneer. See Order Approving Auctioneer; Hr'g Tr. 130–33; Appellant Br. 10–13. Country Boys is therefore an employed professional and must be "disinterested." See 11 U.S.C. § 327(a).

In relevant part, the bankruptcy code defines a disinterested person as one who is not an insider. Id. § 101(14)(A). When the debtor is an individual—as is the case here—an insider is (i) a "relative of the debtor or of a general partner of the debtor," (ii) a "partnership in which the debtor is a general partner," (iii) a "general partner of the debtor," or, (iv) a "corporation of which the debtor is a director, officer, or person in control . . . ." Id. § 101(31)(A). Any professional person who fits into one of these enumerated categories is a "statutory insider" of the debtor and, therefore, interested. A debtor in possession cannot employ these professionals under section 327.

The Bankruptcy Administrator concedes that Country Boys falls outside the section 101(31)(A) categories and is not a "statutory insider" of the Winslows. Appellant Br. 15. This court agrees and now addresses whether Country Boys is a non-statutory insider.

As discussed, the bankruptcy code's enumerated list of insiders in 11 U.S.C. § 101(31) is non-exclusive. Thus, courts recognize "non-statutory insiders" who do not fit the bankruptcy code's definition of insider but who are nonetheless sufficiently interested parties to fall within section 101(31). See, e.g., In re Broumas, 1998 WL 77842, at *7; Butler, 72 F.3d at 443. Such non-statutory "insider status may be based on a professional or business relationship with the debtor . . . where [that] relationship . . . [is] close enough [for the non-statutory insider] to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties."

10

In re Friedman, 126 B.R. at 70.

Courts have reached various conclusions on exactly how close the relationship between the debtor and the employed professional must be for the latter to be a non-statutory insider. The Third, Ninth, and Tenth Circuits focus on two factors, in particular, to inform whether an employed professional is a non-statutory insider: (1) the closeness of the relationship between the debtor and the employed professional, and, (2) whether the transaction between those parties was conducted at arm's length. See, e.g., In re Winstar, 554 F.3d at 395–97; In re U.S. Med., 531 F.3d at 1276; In re Friedman, 126 B.R. at 70.[4] An arm's length transaction is one made "in good faith in the ordinary course of business by parties with independent interests. [It is that] standard under which unrelated parties, each acting in his or her own best interest, would carry out a particular transaction." In re U.S. Med., 531 F.3d at 1277 n.4 (quotation omitted).

In analyzing non-statutory insider status, the Fourth Circuit likewise initially focuses on the relationship between the debtor and the employed professional. See In re Broumas, 1998 WL 77842, at *7; Butler, 72 F.3d at 443. But the Fourth Circuit has sent mixed signals on how to analyze that relationship. On the one hand, in Butler, the Fourth Circuit appeared to focus on whether "the alleged insider . . . exercise[d] sufficient authority over the debtor so as to unqualifiably dictate . .

---

[4] Factually, none of these cases concern the relationship between a debtor and an employed professional. Most of them discuss insider status in the context of insider-preference actions or with regard to trustees of a debtor. But nothing in the cases indicates that their legal rules are bounded by the narrow facts in issue. The Bankruptcy Administrator argues to the contrary, contending that the court should focus on the appearance of impropriety. Appellant Br. 20–21. But three of the cases the Bankruptcy Administrator cites to support this proposition—In re Paolino, 80 B.R. 341 (Bankr. E.D. Pa. 1987), In re Martin, 817 F.2d 175 (1st Cir. 1987), and In re Vebeliunas, 231 B.R. 181 (Bankr. S.D.N.Y. 1999)—do not address how to define a non-statutory insider. The fourth case—Dye v. Brown (In re AFI Holding, Inc.), 355 B.R. 139 (B.A.P. 9th Cir. 2006), aff'd, 530 F.3d 832 (9th Cir. 2008)—wrestles with defining non-statutory insider status. However, the language from that opinion that the Bankruptcy Administrator cites is unpersuasive. As the Bankruptcy Administrator highlights, the Ninth Circuit held that courts must look into both actual and potential impropriety. Id. at 153–54. But they must do so when considering the broader concept of disinterestedness.

11

. the disposition of [the debtor's] assets." Butler, 72 F.3d at 443 (quotation omitted). Two years later, however, in an unpublished opinion, the Fourth Circuit appeared to endorse the broader approach of the Third, Ninth, and Tenth Circuits, albeit in an unpublished decision. See In re Broumas, 1998 WL 77842, at *7–8 (focusing on the closeness of the relationship generally and discussing facts suggesting that transactions between the parties were less than arm's length).

The possible tension between Butler and In re Broumas has caused confusion among the district and bankruptcy courts within the circuit. Some courts continue to follow Butler. E.g., In re Carr & Porter, 416 B.R. at 256, 259 (citing Butler and relying exclusively on control as the determining factor in finding non-statutory insider status); Campbell v. Deans (In re J.R. Deans Co., Inc.), 249 B.R. 121, 138–39 (Bankr. D.S.C. 2000) (denying summary judgment because "an issue of material fact remain[ed] as to whether HRE . . . exercised sufficient control over Debtor to satisfy the standard" for non-statutory insider status set forth in Butler). Others adopt an approach similar to that in In re Broumas. E.g., In re Three Flint Hill, 213 B.R. at 299–301 (noting that "control is not dispositive" and focusing more broadly on the closeness of the relationship between the parties and on whether the parties' transactions were made at arm's length); In re Locke Mill Partners, 178 B.R. 697, 702 (Bankr. M.D.N.C. 1995) (noting that the degree of control over a debtor is only "one of the . . . considerations" when determining non-statutory insider status, and that "[t]he word 'insider' should be applied flexibly to include a broad range of parties who have a close relationship with the debtor" such that their "conduct is made subject to closer scrutiny than those dealing at arms [sic] length with the debtor" (quotations omitted) (emphasis removed)).

The legislative history of section 101(31) supports the In re Broumas approach. "An insider" as defined in the bankruptcy code is intended to encompass those "who ha[ve] a sufficiently close relationship with the debtor that [their] conduct is made subject to closer scrutiny than those dealing at arms [sic] length with the debtor." S. REP. NO. 95-989, at 5810 (1978). This purpose also informs the analysis of non-statutory insider status. The relevant inquiry is not limited to control, but rather

12

includes the closeness of the relationship between the debtor and the alleged non-statutory insider as well as whether the transaction between the two was made at arm's length. See In re Heights Ban Corp., 89 B.R. 795, 799 (Bankr. S.D. Iowa 1988) ("Persons not specifically defined [in section 101(31)] but of similar type also can be 'insiders.'"); In re Three Flint Hill, 213 B.R. at 298 ("Courts generally hold, in accordance with the legislative history of Section 101(31), that [non-statutory] insider status is determined by a factual inquiry into the closeness of the relationship between the parties and whether the transaction between the [parties] was conducted at 'arm's length.'"); In re Locke Mill Partners, 178 B.R. at 702 ("The word 'insider' should be applied flexibly to include a broad range of parties who have a close relationship with the debtor. This is supported by the legislative history of § 101(31)."). In light of these considerations, the court adopts the approach of the Fourth Circuit in In re Broumas and of the Third, Ninth, and Tenth Circuits.

Having now established the governing framework, the court addresses the merits and concludes that Country Boys is not a non-statutory insider. First, Country Boys does not have an impermissibly close relationship with the Winslows. Notably, in considering this factor, courts focus on the relationship between the employed professional and the debtor. See, e.g., 11 U.S.C. §§ 101(14), (31)(A); In re Winstar, 554 F.3d at 395–98; In re U.S. Med., 531 F.3d at 1276; In re Broumas, 1998 WL 77842, at *7; Butler, 72 F.3d at 443; In re Friedman, 126 B.R. at 70. Here, the record demonstrates no direct or indirect relationship between Country Boys and the Winslows, let alone an impermissibly close one.[5]

---

[5] The bankruptcy court did grant Douglas Gurkins all the powers and duties of a debtor in possession. Order Approving CRO ¶ 5. But those words do not make him the actual debtor. The Bankruptcy Administrator's emphasis on the specific language that the bankruptcy court used to describe Douglas Gurkins's power is misplaced. Absent unusual circumstances (not present here), the relevant relationship is the one between the employed professional and the actual debtor. Nonetheless, even if In re Broumas permits an inquiry into the relationship between the Winslows' CRO and Country Boys, that relationship does not change the result in this case.

13

Likewise, the Winslows' decision to employ Country Boys was made at arm's length. In arguing to the contrary, the Bankruptcy Administrator raises several points: (1) Douglas Gurkins's adult son is the president and principal shareholder of Country Boys; (2) Douglas Gurkins uses a Country Boys email address and, until this litigation, was mentioned on the masthead of the company's website, thereby suggesting his continued affiliation with Country Boys; and, (3) Douglas Gurkins admitted to the bankruptcy court that the Winslows did not consider anyone else for the auctioneer position. Appellant Br. 21–22. However, more significant facts demonstrate that the Winslows made the decision to hire Country Boys "in good faith [and] in the ordinary course of business . . . ." In re U.S. Med., 531 F.3d at 1277 n.4 (quotation omitted). All agree, and the bankruptcy court found, that Country Boys is a reputable and highly regarded auction company. Moreover, Douglas Gurkins's affiliation with Country Boys is largely historical. He has not participated in Country Boys's day-to-day operations for over five years, Bankruptcy Administrator's Objection ¶ 6, having resigned as president of the company in January 2005 and having simultaneously transferred his stock to his adult son. See Am. to Appl. for Approval of Auctioneer ¶ 3; Suppl. to Appl. for Approval of Auctioneer ¶¶ 2, 4(b)–(c). In the years following his resignation, he has never accepted money, in any form, from Country Boys. Hr'g Tr. 74, 89. Indeed, the Bankruptcy Administrator "has great respect for the credibility and hard work of both Doug and Michael Gurkins," and concedes that there "is only a potential conflict of interest" at issue here. Bankruptcy Administrator's Objection ¶ 9. This statement both confirms the arm's length nature of the transaction between the Winslows and Country Boys, and reveals the complete absence of impropriety on the part of Douglas Gurkins, Michael Gurkins, and Country Boys.

Finally, Country Boys's employment does not appear improper. Before the bankruptcy court approved retaining Country Boys as the Winslows' auctioneer, the Winslows and Douglas Gurkins fully disclosed the relationship among Douglas Gurkins, Michael Gurkins, and Country Boys. See Appl. for Approval of Auctioneer; Am. to Appl. for Approval of Auctioneer; Mem. Supp. Appl. for

Approval of Auctioneer; Suppl. to Appl. for Approval of Auctioneer. Indeed, Douglas Gurkins has repeatedly admitted his familial relationship with Michael Gurkins and his historical relationship with Country Boys. See Hr'g Tr. 73–74, 88–89. Such full and public disclosure mitigates any perceived impropriety. That Douglas Gurkins did not negotiate (or even have the option to negotiate) a favorable commission for Country Boys further dispels the appearance of impropriety. Rather, the company's compensation was set by local court rules and a court-established commissions scale. Appellee Br. 14 & Att. 1; see also In re Winslow, No. 10-06745-8-JRL, [D.E. 440], Ex. B; Appl. for Approval of Auctioneer ¶¶ 6–8; Mem. Supp. Appl. for Approval of Auctioneer ¶ 3; Hr'g Tr. 89. Moreover, Douglas Gurkins's testimony that he has not received "a dime's worth of funds" from Country Boys in six years extinguished any lingering appearance of impropriety. See Hr'g Tr. 74. Similarly, no one questions the competence of Michael Gurkins or the legitimacy of Country Boys as an auctioneer. In sum, these facts demonstrate the absence of an appearance of impropriety. Accordingly, the record makes clear that Country Boys is not a non-statutory insider.

Alternatively, even if Butler sets forth the exclusive framework for analyzing this appeal, the result would be the same. Under Butler, the court would consider the degree of control Country Boys exercised over the Winslows. Here, that degree of control is nil. When the Winslows were considering Country Boys as auctioneer, Country Boys had no direct control over the Winslows. Indeed, the company's only connection to the Winslows was through Douglas Gurkins. As the Winslows' CRO, Douglas Gurkins had significant control over the bankruptcy estate. But he had, at best, a historical affiliation with Country Boys. Furthermore, neither Douglas Gurkins nor Country Boys negotiated the company's commission. Country Boys exercised no control over the Winslows or their CRO at the time the company was hired, and therefore is not a non-statutory insider under Butler.

IV.

As explained above, the appeal is not equitably moot, and Country Boys is not a statutory or a non-statutory insider. Accordingly, the judgment of the bankruptcy court is AFFIRMED.

SO ORDERED. This **22** day of February 2012.

JAMES C. DEVER III
Chief United States District Judge